**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

LINFO IP, LLC,

        *Plaintiff*,

   v.

SALLY BEAUTY, LLC,

        *Defendant*.

Civil Action No. 6:22-cv-01291-ADA

JURY TRIAL DEMANDED

## DEFENDANT SALLY BEAUTY, LLC'S REPLY CLAIM CONSTRUCTION BRIEF ON THE TERMS OF U.S. PATENT NO. 9,092,428

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  THE DISPUTED TERMS ................................................................................... 1

    A.  "Obtaining, by a computer system, a text content comprising one or more words or phrases [or sentences]" (claims 1, 14). ...................................................... 1

    B.  "First semantic attribute and second semantic attribute" (claims 1-3, 5, 14-17) ................ 2

    C.  "Attribute type or attribute value" (claims 1, 14) ............................................... 3

    D.  "Identifying a words or phrases in the text content associated with the first semantic attribute or the second semantic attribute" / "identify, in the text content, a word or a phrase associated with the user-specified or user-desired attribute" (claims 1, 14) ........... 4

    E.  "Actionable user interface object" (claims 1, 14) ............................................... 5

       1.  Defendant's Construction is Based on the Plain Meaning in the Claims and the Patentee's Express Definition. ........................................................................ 5

       2.  The Patentee Disclaimed Keyword-Based Searching.................................. 6

       3.  Plaintiff's Argument Regarding a Word Limit and Juror Confusion is Baseless......... 8

    F.  "User-specified or user-desired attribute" (claims 1, 14) .................................. 9

    G.  "Threshold value of importance of a word or phrase in representing a topic or information focus" (claims 5, 17) ........................................................................ 10

III. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
346 F.3d 1082 (Fed.Cir.2003).................................................................................9

*AFG Indus. Inc. v. Cardinal IG Co.*,
239 F.3d 1239 (Fed. Cir. 2001)..............................................................................6

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
921 F.3d 1060 (Fed. Cir. 2019)..............................................................................8

*Fin Control Sys. Pty., Ltd. v. OAM, Inc.*,
265 F.3d 1311 (Fed.Cir.2001).................................................................................9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)...........................................................................2, 6

*Openwave Sys., Inc. v. Apple Inc.*,
808 F.3d 509 (Fed. Cir. 2015)................................................................................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005).....................................................................2, 5, 8, 10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)...........................................................................2, 5

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001)...........................................................................2, 4

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007)...........................................................................1, 4

## I.      INTRODUCTION

For the reasons discussed below and in Defendant's opening brief (Dkt. 21, the "Opening Brief"), Defendant's constructions adhere to the correct principles of claim construction and should be adopted.

## II.     THE DISPUTED TERMS

### A.      "Obtaining, by a computer system, a text content comprising one or more words or phrases [or sentences]" (claims 1, 14).

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "Inputting text content into the system prior to tokenization" | Plain and ordinary meaning |

Defendant identified the dispute regarding whether text content obtained by a computer system is the text content prior to tokenization. Specifically, there is a dispute as to whether plain text content in a keyword-search box is sufficient to meet this limitation. Plaintiff admits that embodiments in the '428 Patent involve "tokenization" of "text content." (*See* Plaintiff Linfo IP LLC's Opening Claim Construction Brief "Resp.", 4.) Plaintiff's remaining arguments are merely conclusory allegations and the incorrect determination that the specification does not have a bearing on the meaning of the term. (*Id.*)

First, it is not merely "embodiments" that describe tokenization but rather "the present invention" as a whole that includes tokenization. The '428 Patent states that "**the present invention** relates to a computer-assisted method for discovering information in a text content. **This method includes tokenizing the text content into tokens** as instances of terms, and associating grammatical, semantic, and contextual attributes to the tokens." '428 Patent, 3:16-21 (emphasis added); *see Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (citations omitted). Second, Plaintiff's argument that reading

words from the specification is improper ignores the well settled law that claim terms are to be interpreted in light of a patent's written description. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001).

Plaintiff alleges that "plain and ordinary meaning" of the term is proper because the term is "easily understandable" and "unambiguous." (Resp., 2.) Yet, precedent establishes that claim construction is required to resolve genuine disputes regarding the meaning of a term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve that dispute."). Here, the parties genuinely dispute whether the term, when read in light of the specification, requires obtaining the text content prior to tokenization. (Resp., 2.) Plaintiff argues only that the individual words themselves are clear. That is not the test for claim construction. *See SciMed Life Sys., Inc.*, 242 F.3d at 1340 ("the district court properly followed the invocation that '[c]laims must be read in view of the specifications, of which they are a part.'") (citations omitted); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1361 (Fed. Cir. 2013) ("the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (stating the purpose of the specification is "interpret the meaning of a claim"). Plaintiff fails to address Defendant's examples or arguments, or the applicable case law. Defendant respectfully requests the Court adopt its construction of this term.

**B.    "First semantic attribute and second semantic attribute" (claims 1-3, 5, 14-17)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "the meaning of a word or phrase, initially based on matching the word or phrase to a pre-compiled dictionary, word list, or dataset, wherein the first semantic attribute is different from the second semantic attribute" | Plain and ordinary meaning |

2

Plaintiff's argument for this term merely consists of conclusory statements and unsupported allegations. For example, Plaintiff concludes, without support, that "Defendant's argument appears more of a noninfringement argument and improper at this stage." (Resp., 5.) Plaintiff further states that "Defendant's construction is improper as it misreads the caselaw. There is no prohibition that a semantic attribute of a 'first semantic attribute' and 'a second semantic attribute' are the same semantic attributes." *Id.* Plaintiff does not provide any substantial arguments to support these conclusions, identify any cases to dispute Defendant's construction or supporting case law, or provide facts to support its position.

Rather, Plaintiff's brief attempts to create an unsupported distinction, claiming "[a]s such, it is not the semantic attributes that are different, but rather each of "a first semantic attribute" and "a second semantic attribute" are different items or objects." (Resp., 5.) In doing so, Plaintiff appears to agree with Defendant's proposed construction, which states that "the first semantic attribute is different from the second semantic attribute." Plaintiff fails to provide any argument addressing the remainder of Defendant's proposed construction. As such, and given that Defendant's proposed construction is based on both the intrinsic and extrinsic evidence, Defendant respectfully requests that the Court adopt its proposed construction.

C.      **"Attribute type or attribute value" (claims 1, 14)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "attribute type" means "a category of meanings of a word or phrase"<br><br>"attribute value" means "a specific meaning within a category of meanings of a word or phrase" | Plain and ordinary meaning |

Plaintiff seems to argue that since the term "attribute type" and "attribute value" are used multiple times in the specification, this supports plain and ordinary meaning. Plaintiff offers no case law to support this argument, and the specification actually supports the need for construction.

3

The specification continually refers to attribute type as "attribute type/value" ('428 Patent, 9:34, 9:53), "attribute type or value" (*Id.*, 12:29, 15:23, 15:37), or "attribute type or attribute value" (*Id.*, Cls. 1, 14, 18). The only time that attribute type is used without immediately referring to attribute value is when the patent defines the difference, stating "[t]here are different types of semantic attributes, and **each type can have a value**. For example, **'opinion' can be a semantic attribute type, and 'positive' or 'negative' can be a value of the semantic attribute of 'opinion.'** 'Drug' can be a type of semantic attribute, and 'aspirin' can be a value of this attribute." *Id.*, 8:29-34 (emphasis added). Thus, contrary to Plaintiff's assertion, the only clarity that a juror would get from the specification is from the explicit distinction upon which Defendant relies for its proposed construction. Accordingly, Defendant's proposed construction should be adopted.

> **D.   "Identifying a words or phrases in the text content associated with the first semantic attribute or the second semantic attribute" / "identify, in the text content, a word or a phrase associated with the user-specified or user-desired attribute" (claims 1, 14)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "attaching semantic attributes to tokens representing words or phrases in the text content" | Plain and ordinary meaning |

For this term, Plaintiff merely echoes the same unsupported arguments it raised for the first term. (*See* Resp., 7.) "Tokenization" is not merely included in some embodiments as Plaintiff alleges. Rather, "tokenizing" is referred to where the '428 Patent describes "the present invention." *See supra*, § II.A; *see also* '428 Patent, 3:16-21. Thus, this description does limit the scope of the invention. *See Verizon Servs. Corp.*, 503 F.3d at 1308. Furthermore, Plaintiff reiterates the incorrect assertion that "reading words from the Specification into the claims is improper." (Resp., 7) As addressed above, it is axiomatic that the claims are to be construed in light of the specification. *See SciMed Life Sys., Inc.*, 242 F.3d at 1340 ("the district court properly followed the invocation that '[c]laims must be read in view of the specifications, of which they are a part.'"

4

(citations omitted)); *Power Integrations, Inc.*, 711 F.3d at 1361 ("the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."); *Phillips*, 415 F.3d at 1323 (stating the purpose of the specification is "interpret the meaning of a claim").

In contrast, Defendant's proposed construction is directly related to the language of the '428 Patent and resolves the dispute between the parties. Thus, Defendant respectfully requests that its proposed construction be adopted.

### E.    "Actionable user interface object" (claims 1, 14)

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "A user interface object that displays a pre-defined attribute as a criterion for extracting, displaying or hiding, or highlighting terms that meet the criterion, without user typing in the criterion, or without the need to match a keyword in the criterion with a keyword in the content, as well as its function of receiving user input for a selected action to perform on the terms in the text content that carry the specified attributes" | Plain and ordinary meaning |

### 1.    Defendant's Construction is Based on the Plain Meaning in the Claims and the Patentee's Express Definition.

The term "actionable user interface object" should be construed in accordance with the plain meaning of the claims and the patentee's express definition in the specification.   As Defendant explained in its Opening Brief, the claims and the specification make clear that the "actionable user interface object" operates by having the user select a "semantic" attribute rather than performing a keyword search. (*See* Opening Brief, 12-15.) Furthermore, the term is expressly defined in the '428 Patent itself (*See id.*, 11-12).  Plaintiff fails to overcome these arguments.

First, Plaintiff contends that Defendant's proposed construction does not match the express construction in the specification.  (Resp., 8.)  That is incorrect.  Other than a non-substantive

grammatical adjustment, Defendant's proposed construction is taken word-for-word from the patentee's express definition in the specification. *See* '428 patent, 15:32-41.

Second, Plaintiff contends that no construction is needed because the term is "adequately defined by the words surrounding the term[]." (Resp., 10.)  As noted above, construction is needed because the parties disagree as to how that language (as well as the specification and prosecution history) informs the term's meaning. *See O2 Micro*, 521 F.3d at 1362.  Plaintiff concedes that the surrounding claim language requires that the "actionable user interface object" perform an action on a word or phrase associated with a user-specified "semantic" attribute. (Resp., 10) ("[A]n action is performed on the word or phrase associated with the user-specified or user-desired **semantic** attribute.") (emphasis added)).  However, the parties disagree on how the surrounding claim language impacts the scope of the disputed claim term, and whether the "actionable user interface object" requires a user to select a semantic attribute or whether the term could be satisfied by a keyword search.  The jury should not be charged with resolving that disagreement regarding the scope of the claim term. Rather, "[i]t is critical for trial courts to set forth an express construction of the material claim terms in dispute." *AFG Indus. Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001).

### 2.     The Patentee Disclaimed Keyword-Based Searching.

As explained in Defendant's opening brief, the patentee disclaimed a keyword-based search in the specification as well as during prosecution.  (Opening Brief, 12-15.)  Plaintiff's argument to the contrary does not withstand scrutiny.

Plaintiff incorrectly contends that the '428 Patent discloses three "embodiments" which feature keyword-based searching. (Resp., 8.).  To the contrary, all three passages cited by Plaintiff describe **the prior art**, and focus on **disparaging keyword-based search**.

The first alleged embodiment is a description of the "the problem of information overload" in the prior art, and the inadequacy of "keyword-based search" to address that problem:

> As is mentioned above **about the problem of information overload**, . . . there can be hundreds or thousands of reviews for an individual product or service on certain websites.  If a reader wants to find information relating to a specific aspect of the product or service . . .  **the user may need to dig in the hundreds or thousands of the reviews or perform a keyword-based search for such aspects of the product/service, provided that the search function is available and the results are manageable**.

'428 Patent, 9:11-18 (emphasis added). Similarly, the second alleged embodiment is another prior art description:

> It should be noted that in modern-day user interface, certain information in the content can be easily highlighted either by default, or by pre-configuration as user preference, or by a process such as highlighting certain specified keywords, or highlighting keywords that match a search query in a search result page, or some other criteria.

'428 Patent, 14:49-54. Finally, the third alleged embodiment (which immediately follows the second alleged embodiment) is yet another **criticism** of keyword-based search:

> However, **users are not able** to dynamically and selectively extract, display or hide, or highlight part of the contents that contain specific information, **especially such information that does not directly match a keyword in the content**, such as a stretch of text that indicate a positive or negative opinion, or other type of grammatical or semantic attributes or properties of an object represented by a term.

'428 Patent, 14:54-61 (emphasis added). Thus, all three passages discuss the prior art, disparage a keyword-based search, and distinguish it from the semantic search of the alleged invention.  *Cf. Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 517 (Fed. Cir. 2015) ("[I]t is difficult to envisage how, in light of the repeated disparagement of mobile devices with 'computer modules' discussed above, one could read the claims of the patents-in-suit to cover such devices.").

Furthermore, Plaintiff's assertion that "the words of the claim define the invention but there is no disclaimer of a keyword search in the context of the claims" is non-sensical. (Resp., 8-9.)

There is no requirement that a disclaimer appear "in the context of the claims."  To the contrary, in virtually every case of disclaimer, the disclaimer is found **outside** of the claims, such as in the specification or the prosecution history.  *See, e.g.*, *Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor.  In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive."); *id.* at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.").

Finally, Plaintiff does not in any way address the language in the specification, the incorporated-by-reference specifications, the prosecution history where the patentee disclaimed the use of keyword-based searching, or the patentee's amendment to add the "actionable user interface object" limitation and explanation that operational steps linking that user interface object to "semantic" attributes are "needed in the present application." (Opening Brief, Ex. 8, LIN000090.)

### 3.    Plaintiff's Argument Regarding a Word Limit and Juror Confusion is Baseless.

Plaintiff also incorrectly contends that Defendant's proposed construction is too long and "would render the claim unmanageable for the jury."  (Resp., at 9.)  Plaintiff provides no legal support for this argument. In contrast, the Federal Circuit's standard is abundantly clear—a term should be given its proper construction in light of the claims, specification, and prosecution history, as well as any relevant extrinsic evidence.  *See Phillips*, 415 F.3d at 1321.  The Federal Circuit regularly construes terms with phrases drawn from the specification and prosecution history that define or explain the detailed meaning of the term.  *See, e.g.*, *E.I. du Pont De Nemours*

& Co. v. Unifrax I LLC, 921 F.3d 1060, 1072 (Fed. Cir. 2019) (construing claim term "100% by weight" in light of specification and prosecution history to mean "[t]here is no carrier material such as resin, adhesive, cloth, or paper in addition to the inorganic platelets.  There may be some residual dispersant arising from incomplete drying of the platelet dispersion."). Plaintiff's attempt to attack the length of a proposed construction— especially one based on the express definition in the specification—is baseless.

For the reasons set forth above and in Defendant's opening brief, Defendant respectfully requests this Court adopt its proposed construction of "actionable user interface object."

### F.   "User-specified or user-desired attribute" (claims 1, 14)

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "semantic attribute that the user selects via the actionable user interface object" | Plain and ordinary meaning |

Plaintiff misstates Defendant's arguments for this term. Contrary to Plaintiff's assertion, Defendant does not concede that the meaning of the disputed language is clear – rather, the meaning *becomes* clear when viewing the disputed language in the context of the surrounding words in the claim and the specification. (Opening Brief, 22); *see ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed.Cir.2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of [the disputed] terms.").

Additionally, Plaintiff's argument that the presence of "semantic attribute" in Defendant's proposed construction means that "semantic attribute" does not require construction is incorrect. For the reasons stated above and in Defendant's opening brief, the term "semantic attribute" requires construction and should be construed the same throughout the claims, including as part of Defendant's proposed construction here. *Fin Control Sys. Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed.Cir.2001) (The Federal Circuit applies a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the

specification and prosecution history that the terms have different meanings at different portions of the claims."); *see also, e.g., Phillips*, 415 F.3d at 1314. Both the "semantic attribute" term and "user-specified or user-desired attribute" term require construction.

G.     **"Threshold value of importance of a word or phrase in representing a topic or information focus" (claims 5, 17)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "a minimum importance score assigned by linguistic processing of a word or phrase" | Plain and ordinary meaning |

Again, Plaintiff's brief misstates Defendant's argument by asserting that "Defendant does not allege that any of the words are ambiguous." (Resp., 12.) The first paragraph of Defendant's argument clearly states that "the meaning of this phrase is ambiguous and requires construction, particularly given that Plaintiff contentions are unclear as to how Defendant's website meets the limitation of 'threshold value of importance.' The intrinsic record resolves this ambiguity." (Opening Brief, p. 23.) Plaintiff further states, incorrectly, that "Defendant's narrowing definition is not, however, present" in the specification. On the contrary, Defendant's proposed construction tracks almost verbatim the language of the specification, which explains that "the linguistic processing module can assign importance scores to the terms in the content." '428 patent, 7:8-9. Defendant's construction appropriately clarifies the ambiguity of this term for the jury by using language directly from specification and therefore should be adopted by the Court.

## III.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court adopt Defendant's proposed claim constructions.

Dated: December 22, 2023    Respectfully submitted,

           FISH & RICHARDSON P.C.

           By: */s/ Alexander H. Martin*    
             Neil J. McNabnay
             Texas Bar No. 24002583
             Ricardo J. Bonilla
             Texas Bar No. 24082704
             Alexander H. Martin
             Texas Bar No. 24091828
             1717 Main Street, Suite 5000
             Dallas, Texas 75201
             (214) 747-5070 (Telephone)
             (214) 747-2091 (Facsimile)
             mcnabnay@fr.com
             rbonilla@fr.com
             martin@fr.com

             ***Attorneys for Defendant***
             ***Sally Beauty, Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on December 22, 2023, to all counsel of record who are deemed to have consented to electronic service.

           */s/ Alexander H. Martin*    
           Alexander H. Martin